RECORD NUMBER: 13-4037

# United States Court of Appeals

*for the*

# Fourth Circuit

**UNITED STATES OF AMERICA,**

*Appellee,*

– v. –

**REGGIE BECKTON,**

*Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA at WILMINGTON

# OPENING BRIEF OF APPELLANT

**RICHARD CROUTHARMEL**
**ATTORNEY AT LAW**
**303-200 Blake Street, Suite 211**
**Raleigh, N.C. 27601**
**(919) 755-1113**
**rcroutharmel@earthlink.net**

*Counsel for Appellant*

 COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

TABLE OF AUTHORITITES ........................................................................ ii

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION............................................................................... 1

STATEMENT OF ISSUES ............................................................... 1

STATEMENT OF THE CASE........................................................ 1

STATEMENT OF THE FACTS .................................................... 3

ARGUMENT ................................................................................... 6

 I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY
        IMPOSING ARBITRARY AND DISPROPORTIONATE
        RESTRICTIONS ON BECKTON'S RIGHT TO TESTIFY
        WHEN IT REFUSED TO ALLOW THE PRO SE BECKTON
        TO TESTIFY UNLESS HE QUESTIONED HIMSELF USING
        A QUESTION-AND-ANSWER FORMAT INSTEAD OF A
        NARRATIVE FORMAT ................................................... 6

SUMMARY OF ARGUMENT ..................................................... 6

STANDARD OF REVIEW ........................................................... 7

DISCUSSION ................................................................................. 7

ARGUMENT ............................................................................... 14

 II.    THE DISTRICT COURT REVERSIBLY ERRED WHEN IT
        IMPERMISSIBLY FORCED THE PRO SE BECKTON TO
        CHOOSE BETWEEN HIS RIGHT TO SELF-
        REPRESENTATION AND HIS RIGHT TO TESTIFY ON HIS
        OWN BEHALF WHEN IT TOLD BECKTON THAT HE
        COULD NOT TESTIFY UNLESS HE DID SO BY
        QUESTIONING HIMSELF IN A QUESTION-AND-ANSWER
        FORMAT AND THAT IF HE DID NOT WANT TO ASK
        HIMSELF QUESTIONS, HIS STANDBY COUNSEL COULD

ASK HIM QUESTIONS BUT HE WOULD HAVE TO LET
STANDBY COUNSEL RESUME CONTROL OF THE CASE ...... 14

SUMMARY OF ARGUMENT .................................................... 14

STANDARD OF REVIEW ......................................................... 15

DISCUSSION ............................................................................ 15

CONCLUSION .......................................................................... 18

REQUEST FOR ORAL ARGUMENT ....................................... 18

CERTIFICATE of COMPLIANCE

CERTIFICATE OF SERVICE

## Cases

*Adams v. United States ex rel. McCann,*
   317 U.S. 269, 63 S. Ct. 236, 87 L. Ed. 268 (1942)................................. 16

*Brown v. Nucor Corp.,*
   576 F.3d 149 (4th Cir. 2009....................................................................... 7

*Chambers v. Mississippi,*
   410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) ......................... 10

*Faretta v. California,*
   422 U.S. 806 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ........... 10, 16

*Harman v. Apfel, .*
   211 F.3d 1172 (9th Cir. 2000)................................................... 15, 16, 17

*Nix v. Whiteside,*
   475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) ........................... 15

*Rock v. Arkansas,*
   483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) .............. 11, 13, 16

*United States v. Ereme,*
   2007 U.S. App. LEXIS 8198 (4th Cir. April 9, 2007) ............................ 7

*United States v. Johnson,*
   617 F.3d 286 (4th Cir. 2010) .................................................................... 7

*United States v. Medford,*
   661 F.3d 746 (4th Cir. 2011) .................................................................. 12

*United States v. Midgett,*
   342 F.3d 321 (4th Cir. 2003) .................................................................. 14

*United States v. Moore,*
   27 F.3d 969 (4th Cir. 1994) ...................................................................... 7

*United States v. Scheffer,*
   523 U.S. 303, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998) ..................... 11

*United States v. Woods*,
   710 F.3d 195 (4th Cir. 2013) ..................................................... 11, 12, 13

*Weeks v. Angelone*,
   528 U.S. 225, 145 L. Ed. 2d 727, 120 S. Ct. 727 (2000) ...................... 10

## **Rules, Statutes, and Other Authorities**

18 U.S.C. § 2113(a) ........................................................................ 1

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 3742(a) ........................................................................ 1

28 U.S.C. § 1291 and ..................................................................... 1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF ISSUES

1. Did the district court abuse its discretion by imposing limitations on Beckton's right to testify that were arbitrary and disproportionate to legitimate concerns of evidentiary reliability or trial management where the district court would not allow the *pro se* Beckton to testify unless he questioned himself using a question-and-answer format instead of a narrative format?

2. Did the district court impermissibly force Beckton to choose between his right to self-representation and his right to testify on his own behalf when the district court gave the *pro se* Beckton the choice of allowing standby counsel to resume full control of the case and then question him or continue to proceed *pro se* but not testify altogether?

## STATEMENT OF THE CASE

On 6 May 2011 a grand jury for the Eastern District of North Carolina indicted Reggie Andre Beckton ("Beckton") on two counts of bank robbery in violation of 18 U.S.C. § 2113(a) (JA p 30).  On 16 May 2011 the United States District Court for the Eastern District of North Carolina ("district court") ordered the local federal public defender's office to provide Beckton with legal counsel (JA p 4, DE 16).  On 31 October 2011 the district court conducted a hearing to determine if Beckton was competent to proceed (JA p 8, DE 63).  On 1 November

1

2011 the district court entered an order finding Beckton competent to proceed (JA p 8, DE 64).

On 4 September 2012 the district court, with the Honorable Senior Judge W. Earl Britt ("Judge Britt") presiding, arraigned Beckton and entered a plea of "not guilty" for him (JA pp 18-19, DE 189). That same day Beckton made a motion to replace his court-appointed attorney, Thomas Manning ("Manning") (JA pp 18-19, DE 189). The district court denied that motion (JA pp 18-19, DE 189). Beckton then asked to represent himself with Manning as standby counsel and the district court granted that request (JA pp 18-19, DE 189). The district court then denied Beckton's motion to continue (JA pp 18-19, DE 189). The jury trial began that same day with jury selection (JA p 20, DE 193).

The district court conducted evidentiary presentation for the jury trial on 10 and 11 September 2012 (JA p 20, DE 195). On 12 September 2012 the jury found Beckton guilty on both counts (JA p 453). On 14 January 2013 the district court sentenced Beckton to the Bureau of Prisons for 240 months on count 1 and 60 months on count 2, both sentences to run consecutively (JA pp 457-58). Beckton filed written notice of appeal with the district court on 14 September 2012 (JA p 22, DE 208). He filed written notice of appeal with the Fourth Circuit Court of Appeals on 1 October 2012 (JA p 23, DE 211). The trial clerk filed written notice of appeal on Beckton's behalf on 14 January 2013 (JA p 456).

## <u>STATEMENT OF THE FACTS</u>

At the jury trial, after the Government for the United States of America ("the Government") presented its evidence and rested and the district court denied Beckton's motion for acquittal, Beckton told Judge Britt he wanted to testify (JA p 360). Judge Britt told Beckton he would have to do so by first asking himself a question and then answering the question (JA p 361). Beckton objected to this and asserted that it impaired his ability to testify (JA p 361). He asked to testify in the narrative (JA p 363). Judge Britt denied that request (JA p 363).

Judge Britt further told Beckton he would have to testify seated from his counsel table (JA p 364)[1]. Beckton objected saying that requirement impaired his ability to deal with his paperwork (JA p 364). Beckton then requested time to prepare questions for standby counsel (Manning) to ask him (JA p 365). Judge Britt told Beckton he would have to allow Manning to resume full control of the case if he wanted Manning to ask him questions (JA p 365). Beckton said that Manning was not taking over his case (JA p 366). He then asked Judge Britt who would ask him questions while he testified (JA p 366). Judge Britt told Beckton that if he continued to represent himself, he would have to ask himself questions

---

[1] Judge Britt ruled at the beginning of the trial that Beckton remain in restraints throughout the trial (JA pp 35-41).

while testifying (JA p 367). Beckton reluctantly decided he would give it a try (JA p 367).

The jurors returned to the courtroom and Judge Britt explained to them how Beckton was going to testify (JA pp 368-69). Beckton was sworn and he began testifying without first asking himself a question (JA p 370). Judge Britt stopped him and told him to use the question-and-answer format (JA p 370). Beckton said that he could not testify in that manner (JA p 370). He complained that he was not given enough time to prepare (JA p 370). The Government objected and Judge Britt excused the jury from the courtroom (JA pp 370-71).

Judge Britt then gave Becton an ultimatum: let Manning resume control of the case or be "excluded from the courtroom" (JA p 371, lines 12-15)[2]. Beckton objected and said he had filed a civil lawsuit against Manning (JA p 371). He asked to have another attorney appointed to represent him (JA p 371-72). Judge Britt asked Beckton if he had other witnesses and Beckton said his only other witness was dead (JA p 372-73). Judge Britt then declared evidentiary presentation closed (JA p 373). Beckton complained about not having anything to argue to the jury and Judge Britt suggested he argue that the Government's witnesses were not being truthful (JA p 373-74).

---

[2] The transcript shows that Judge Britt said "excluded from the courtroom" but Beckton assumes he meant to say "precluded from testifying" as Beckton was never actually removed from the courtroom.

4

Beckton then asked that he be allowed to present evidence of duress and Judge Britt denied that request (JA p 374-75). Beckton again complained about not being allowed to testify (JA p 376). Judge Britt then decided to give Beckton another chance to testify but informed him that he would have to do it in a question-and-answer format (JA p 377). Beckton complained that such a requirement was too "rigid" and asked how often such a scenario took place (JA p 377-78). Judge Britt told him it occurred very rarely because very few defendants chose to represent themselves (JA p 379).

The jury returned to the courtroom and Beckton again began testifying without first asking himself a question and Judge Britt again stopped him (JA pp 379-80). The jury left the courtroom and Beckton consulted with Manning (JA p 381). Manning then told Judge Britt he was prepared to examine Beckton and give a closing argument (JA pp 381-82). Beckton complained about not being able to do it his way and the lack of preparation time (JA p 382-86). After a lengthy complaint, Beckton finally said he did not want Manning representing him (JA p 388). Judge Britt asked Beckton if he had any other witnesses and Beckton facetiously said no so Judge Britt declared the evidence closed (JA p 388-89). Judge Britt then made a second motion for acquittal on Beckton's behalf and then denied the motion (JA p 389). Beckton again asked to testify and Judge Britt denied the request (JA p 389).

After a charge conference, closings, jury instructions, and approximately

five hours of jury deliberations, the jury found Beckton guilty on both counts of

bank robbery (JA pp 391-453).  Judge Brit subsequently sentenced Beckton to 300

months in prison (JA pp 457-58).  Beckton appealed (JA p 456).

## ARGUMENT

**I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING ARBITRARY AND DISPROPORTIONATE RESTRICTIONS ON BECKTON'S RIGHT TO TESTIFY WHEN IT REFUSED TO ALLOW THE *PRO SE* BECKTON TO TESTIFY UNLESS HE QUESTIONED HIMSELF USING A QUESTION-AND-ANSWER FORMAT INSTEAD OF A NARRATIVE FORMAT.**

<u>Summary of Argument</u>

Judge Britt said he was requiring Beckton to testify by asking himself

questions and then answering those questions to allow the Government to object

before Beckton said something objectionable to the jury (JA p 361, lines 7-10).

Beckton asserts that the district court's requirement served to damage his

credibility in front of the jury rather than allow the Government to appropriately

object to his testimony.  As such, the district court's requirement rose to the level

of being arbitrary and disproportionate to any legitimate concerns of evidentiary

reliability or trial management and amounted to an abuse of discretion.

6

<u>Standard of Review</u>

This Court reviews a claim that a district court improperly limited a defendant's right to testify in his own defense under an abuse of discretion standard and this Court will not disturb a district court's decision unless it acted arbitrarily or irrationally. *United States v. Ereme*, 2007 U.S. App. LEXIS 8198 at *5 (4th Cir. April 9, 2007) (unpublished) (citing *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994)). A district court abuses its discretion when its decision is "guided by erroneous legal principles or rest[ed] upon a clearly erroneous factual finding." *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (quoting *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009)) (internal quotation marks omitted).

<u>Discussion</u>

Beckton asserts that reversible error exists here because the trial court forced him to testify using a question-and-answer format, rather than a narrative format, and it further directed Beckton to question himself rather than allowing someone else to question him (JA p 366). The following exchange occurred:

| | |
|---|---|
| Judge Britt: | You decide after talking to Mr. Manning whether you want him to go from here forward as your lawyer or whether you want to continue to represent yourself. |
| Beckton: | [Manning]'s not taking the case, Your Honor. Somebody has to question me when I take the stand. Who's gonna do that? Her, you, or one of the people in the stands back here? The jury? |

7

| | |
|---|---|
| Judge Britt: | Mr. Manning is going to question you if you allow him to take back over. If you represent yourself, you have to frame the question and then you have to provide the answer. |
| Beckton: | So I have to frame the question? |
| Judge Britt: | Decision time. |
| Beckton: | Then let's do it. |

(JA pp 366-67)

The jurors returned to the courtroom and Judge Britt instructed them thusly:

At this time, the defendant is gonna have the opportunity to present evidence, if he has any. As you have heard me instruct you earlier, the defendant has elected to represent himself in this case. That means that if he elects to testify in his own behalf, he's gonna have to ask himself a question and then answer the question, and the reason for that is the evidence is presented in a question-and-answer format. It allows the opposing party to object to the question because it may be an improper thing for the jury's consideration -- you've seen that throughout this trial -- so obviously the defendant is not allowed to do any different from any other witness. He can't just get up on the witness stand or where he is now and make a narrative statement to you -- he can't do that. So it may be a little awkward, but we'll get through it. I've explained to Mr. Beckton that he must ask himself questions and then allow the government the opportunity to object to the question so I can rule on it, and we'll see how it goes.

(JA p 369) Beckton began testifying as follows: "Well, the question -- the matter that's in question right now is to determine whether on August 17th --" (JA p 370, lines 8-10). Judge Britt stopped Beckton and told him that he had to first ask himself a question (JA p 370). Beckton then said "I can't proceed in this capacity,

8

Your Honor.  I mean, I've only been given a couple days to prepare for this case."
(JA p 370, lines 18-20).

From this exchange one can see that Beckton was uncomfortable with questioning himself.  He questions why it was necessary to force him to testify using the question-and-answer format rather than the narrative format and to do so by questioning himself.  Judge Britt told the jurors it was because he could not treat Beckton differently than other witnesses.  However, Judge Britt had already treated Beckton differently.  Beckton was shackled and had to remain at his counsel table throughout the trial (JA pp 35-41).  The jurors were aware that Beckton was representing himself.  The trial court's directive that Beckton question himself while testifying served only to make Beckton appear schizophrenic.  The effect would have been to show Beckton talking to himself in public.  There exists in all humans a palpable fear of being seen talking to oneself in public.  Most people believe that talking to yourself out loud gives others the impression you are mentally unhealthy.  Thus, Beckton's reluctance in questioning himself in front of the jury was understandable.

Further, there was no need to protect the Government's interests by forcing Beckton to use the question-and-answer format with himself.  The Government demonstrated its ability to object when Beckton made objectionable comments in the jury's presence as noted by this exchange:

9

| Beckton: | I can't proceed in this capacity, Your Honor. I mean, I've only been given a couple days to prepare for this case. |
|---|---|
| Prosecutor: | Objection, Your Honor. |
| Court: | Sustained.  Members of the jury, disregard anything the defendant is now saying. You may not consider anything he said. |

(JA p 370, lines 18-24)  The trial court could have used the same procedure to limit Beckton's testimony had he testified in the narrative.  *See Weeks v. Angelone*, 528 U.S. 225, 234, 145 L. Ed. 2d 727, 120 S. Ct. 727 (2000) (jurors are presumed to follow the court's instructions).  Further, there is no rule of evidence that requires a question-and-answer format.  There is no rule of evidence that precludes the narrative format.  Thus, the trial court's chosen procedure was arbitrary and designed for reasons other than protecting evidentiary reliability or trial management.

Beckton is aware that a defendant choosing to appear *pro se* still must comply with substantive and procedural courtroom rules.  *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).  *See also Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (in presenting witnesses in his defense, a defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence").  Thus, a district court may

10

impose "reasonable restrictions" on a defendant's ability to present relevant evidence. *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998).

However, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 55-56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)). Additionally, the wholesale exclusion of a defendant's testimony is an arbitrary restriction on a criminal defendant's right to testify in the absence of clear evidence justifying the wholesale exclusion. *See Rock*, 483 U.S. at 61 (wholesale inadmissibility of post-hypnosis testimony was deemed an arbitrary exclusion of all of defendant's testimony). Here, the trial court ultimately excluded Beckton's testimony wholesale before he had even demonstrated what exactly he was going to say. Maybe Beckton would have tried to proffer some testimony the trial court had previously ruled must be excluded (e.g., duress). However, Beckton had not made that apparent at trial before he took the witness stand. He had not indicated in any way that he was about to perjure himself. Even if one assumes he had, the trial court still had the ability to stop him and instruct the jury to disregard the testimony.

A case that is instructive in this situation is *United States v. Woods*, 710 F.3d 195 (4th Cir. 2013). In *Woods*, the appellant argued on appeal that the trial court

11

impermissibly infringed on his right to testify by repeatedly sustaining the Government's objections throughout his testimony. *Id.* at 200. This Court ultimately ruled against the defendant citing *United States v. Medford*, 661 F.3d 746, 751 (4th Cir. 2011), for the proposition that a district court enjoys broad discretion in ruling on the admissibility of evidence. *Id.* However, the defendant in *Woods* at least got to testify and try to tell his version of the facts to the jury. *Id.* In *Woods*, the Government argued to the trial court that the defendant was arguing to the jury during his testimony. *Id.* at 201. Instead of shutting the defendant down wholesale, the trial court directed the defendant to "'just relate the facts,' and to 'confine [his testimony] to the facts . . . about what happened.'" *Id.* This Court noted that "[d]espite the government's objections, Woods was permitted to testify regarding a range of issues assisting his defense[.]" *Id.*

Here, Beckton did not even get an opportunity to testify. Instead the district court thrust upon him a choice between (1) being embarrassed with the stigma of talking to himself in front of the jury or (2) waiving his right to represent himself or (3) waiving his right to testify. Beckton discusses the error associated with his right to represent himself *infra* in Argument II. Here he asserts the district court's chosen procedure of forcing him to testify by asking himself questions and then answering those questions was arbitrary and disproportionate to any legitimate concerns.

12

Had Beckton been allowed to testify in the narrative and had the Government repeatedly objected throughout his testimony and had the trial court sustained every objection, there probably would be no error to assert. That is the lesson from *Woods*. Instead, the district court engaged in the wholesale exclusion of Beckton's testimony despite a lack of evidence that he was about to perjure himself or any other justification. Wholesale exclusion of testimony without justification is *per se* arbitrary. *Rock*, 483 U.S. at 61. Arbitrary restrictions of a defendant's right to testify constitute reversible error. *Scheffer*, 523 U.S. at 308.

Beckton should have been given the opportunity to testify and present his version of the facts to the jury and he should have been allowed to do so without the demeaning and embarrassing approach of talking to himself in a question-and-answer format in front of the jury. The district court would have been well within its authority to exclude Beckton's testimony piecemeal by sustaining numerous Government objections during his testimony. Instead, forcing Beckton to choose between (1) embarrassing himself in front of the jury or (2) giving up his right to represent himself or (3) giving up his right to testify altogether was a "Hobson's Choice" (no choice at all) that amounted to an abuse of discretion by the district court. Beckton respectfully requests that the Court vacate and remand for a new trial on this issue.

## ARGUMENT

**II.  THE DISTRICT COURT REVERSIBLY ERRED WHEN IT IMPERMISSIBLY FORCED THE *PRO SE* BECKTON TO CHOOSE BETWEEN HIS RIGHT TO SELF-REPRESENTATION AND HIS RIGHT TO TESTIFY ON HIS OWN BEHALF WHEN IT TOLD BECKTON THAT HE COULD NOT TESTIFY UNLESS HE DID SO BY QUESTIONING HIMSELF IN A QUESTION-AND-ANSWER FORMAT AND THAT IF HE DID NOT WANT TO ASK HIMSELF QUESTIONS, HIS STANDBY COUNSEL COULD ASK HIM QUESTIONS BUT HE WOULD HAVE TO LET STANDBY COUNSEL RESUME CONTROL OF THE CASE.**

Summary of Argument

Beckton assumes he has established that questioning himself using a question-and-answer format was an arbitrary and disproportionate restriction on his right to testify (*see* Argument I *supra*).  His only other choice was to allow standby counsel to question him but that could occur if, and only if, he waived his right to self-representation and allowed standby counsel to resume full control of the case (JA pp 366-67).  In doing this, the district court impermissibly forced Beckton to choose between two constitutionally protected rights:  the right to self-representation and the right to testify.  Presenting a defendant with such a choice is reversible error.  *United States v. Midgett*, 342 F.3d 321 (4th Cir. 2003).

14

Standard of Review

Beckton asserts that the standard of review here is *de novo* because that was the approach this Court took in *Midgett*, 342 F.3d at 325-26, when the Court wrote as follows:

> The question, then, is whether the information known to defense counsel was sufficient to show that Midgett's testimony would be perjurious so as to bring this case within the rule set forth in [*Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986)]. We conclude that it was not.

This language shows that this Court gave no deference to the lower court, but rather determined for itself if the record evidence showed that the lower court should be reversed on the ground that its decision was contrary to law. *See Harman v. Apfel*, 211 F.3d 1172, 1175-76 (9th Cir. 2000).

Discussion

Beckton assumes he has established that questioning himself using a question-and-answer format was an arbitrary and disproportionate restriction on his right to testify and thus an abuse of discretion by the district court (*see* Argument I *supra*). In other words, it was not an option authorized in law. For Beckton to exercise his right to testify on his own behalf, his only other choice was to allow Manning to question him. However, that could occur if, and only if, Beckton waived his right to self-representation and allowed Manning to resume full control of the case (JA pp 366-67). This presented Beckton with a choice between

15

waiving his right to self-representation and waiving his right to testify on his own behalf.

Both the right to self-representation and the right to testify are constitutional. A defendant's right to self-representation is rooted in the Sixth Amendment right to counsel. *Faretta*, 422 U.S. at 814 ("the Sixth Amendment right to the assistance of counsel implicitly embodies a "correlative right to dispense with a lawyer's help") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)). A defendant's right to testify in his own defense is rooted in the Constitution's Due Process Clause, Compulsory Process Clause, and Fifth Amendment right against self-incrimination. *Rock*, 483 U.S. at 49-53.

The district court gave Beckton a choice that was very similar to the choice the defendant was presented with in *Midgett*. In *Midgett* the defendant wanted to testify and give testimony his court-appointed attorney believed, but did not know, to be untrue. *Midgett*, 342 F.3d at 323. Defense counsel asked to withdraw if the defendant took the witness stand. *Id.* Rather than permitting defense counsel to withdraw, the district court presented the defendant with a choice: either accede to defense counsel's request that he not testify or testify but proceed representing himself. *Id.* The defendant ultimately declined to testify but did so unwillingly. *Id.* at 324. His defense counsel presented no evidence. *Id.* The jury convicted. *Id.* The defendant appealed. *Id.* This Court vacated and remanded noting there was

16

no record evidence the defendant was about to perjure himself and thus the district court impermissibly presented the defendant with choosing between two constitutionally protected rights: the right to testify on his own behalf and the right to counsel. *Id.* at 327.

The situation is very similar here. The district court impermissibly presented Beckton with a choice between his right to self-representation and his right to testify on his own behalf. It is insufficient to say Beckton had the right to testify because he could have testified by agreeing to a question-and-answer format and questioning himself. As Beckton argued above: such an approach amounted to an arbitrary and disproportionate restriction on his right to testify as it would have weakened his credibility in the eyes of the jury.

As did the defendant in *Midgett*, Beckton reluctantly gave up his right to testify. Even though it is unknown what Beckton would have said had he testified and even though the Government's case was strong, this Court must still vacate and remand for a new trial because it is reversible error to force a defendant to choose between two constitutionally protected rights when there is no record evidence he has affirmatively or implicitly waived either right. *Id.* As he argued above, there is no record evidence that Beckton was about to perjure himself or otherwise present testimony that required wholesale exclusion of his testimony. In other words, he did not explicitly or implicitly waive either right.

17

Beckton asserts that the right to self-representation is on equal footing with the right to counsel.  As such, this case is close enough to *Midgett* to warrant the same result:  vacating the conviction and remanding for a new trial.  Beckton respectfully asks this Court to so order.

## **CONCLUSION**

Based on the arguments and authorities cited herein, Beckton respectfully asks this Court to vacate the district court's judgment and remand this case for a new trial.

## **ORAL ARGUMENT**

Counsel for Beckton requests oral argument.


/s/Richard Croutharmel

Richard Croutharmel, N.C. State Bar:  #29165
Attorney at Law
303-200 Blake Street, Suite 211
Raleigh, NC 27601
919-755-1113
Fax: 919-755-1162
rcroutharmel@earthlink.net

Attorney for Defendant-Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

**JENNIFER MAY-PARKER**
**OFFICE OF THE U.S. ATTORNEY**
**Federal Building**
**310 New Bern Avenue, Room 800**
**Raleigh NC 27601-1461**
**(919) 856-4530**
**jennifer.may-parker@usdoj.gov**


*/s/ Catherine B. Simpson*
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664



Filing and service were performed by direction of counsel